IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DEBORAH RAY, as Administratrix of the Estate
of Justin Smith, deceased                                                          PLAINTIFF

V.                                                              CAUSE NO.: 1:09CV213-SA-DAS

CITY OF COLUMBUS, ROBERT SMITH,
RICK JONES, and JOE JOHNSON
in their individual and official capacities                                       DEFENDANTS

MEMORANDUM OPINION

  Plaintiff brings this Section 1983 suit against the City of Columbus, its Mayor, Robert Smith, and Columbus police officers, Rick Jones and Joe Johnson, alleging that Defendants violated the Fourth Amendment prohibition against use of excessive force, and that those in charge failed to train and supervise police officers. Defendants filed summary judgment motions[188, 190, 191, 192] to dismiss Plaintiff's claims. After reviewing the motions, responses, rules and authorities, the Court finds as follows:

*Factual and Procedural Background*

  On January 31, 2008, at 1:00 a.m., Adam Chandler called 911 to report a burglary in progress at his unoccupied rental house in Columbus, Mississippi. Sergeant Richard "Rick" Jones and Assistant Chief Joe L. Johnson arrived first to the scene of 717 15th Street North. Lieutenant Randy Karg and Officer Kenneth Brewer subsequently arrived and took positions outside the front of the house and along the side of the house with windows. Jones and Johnson noisily entered the dwelling through the back door.[1] Officer Brewer testified that when Jones and Johnson entered the back door,

---

[1] Objects were placed against the back door on the inside such that any entry into that door would cause noise according to the officers' testimony, as well as heard on the audio recording of the incident.

a figure appeared at one of the windows on the side of the house and attempted to escape. Brewer yelled at the person to get down, but the person turned back into the house. The suspect was later identified as Justin Smith.

Upon entering the residence, Jones and Johnson drew their Columbus Police Department-issued Sig Sauer forty caliber firearms. Jones testified that he held his weapon in his right hand and a flashlight in his left. Johnson testified that he held the firearm in his right hand raised chest-high. As Sergeant Jones, with Johnson behind him, moved from the kitchen through the hallway toward the front of the house, Smith came out of the second bedroom and ran up the hallway, turned and stepped down two stairs into the living room. Jones chased Justin Smith to the living room where Smith attempted to exit the front door. When he had trouble exiting the door, according to Jones, Smith appeared to surrender to the officer. Jones holstered his weapon and approached Smith to attempt to handcuff him. Smith ducked and ran back toward Johnson and the back of the house. Jones noted that he could tell the suspect was not armed when he approached him to effectuate the arrest.

The sequence, location, and motivations of the next events are in dispute.

Rick Jones testified that Joe Johnson was in the living room when Jones approached the suspect intending to handcuff him. After Smith ducked under Jones' arm and began running toward Johnson, Jones heard a gunshot, turned his head and saw Johnson falling toward his right side, and Smith falling toward his left side. Jones testified that he did not see any contact between the two persons.

Joe Johnson testified that he did not follow Jones and Smith into the living room, but stayed in the hallway until Smith came running toward him. Johnson contends that his gun accidentally

2

discharged and killed Justin Smith.[2] There is no dispute that Joe Johnson's gun discharged and that the discharged bullet caused Justin Smith's death. The report executed after the incident noted that the crime Smith was committing was "trespassing."

Plaintiff contends that the City of Columbus and Robert Smith, individually, permitted customs and practices in the Columbus Police Department which resulted in the deprivation of Justin Smith's constitutional rights. Further, Plaintiff alleges that Joe Johnson and Rick Jones, in their individual capacities, used excessive force to effectuate an unreasonable seizure of Justin Smith pursuant to the Fourth Amendment.[3]

Defendants argue that there are no facts or evidence to hold Jones, the City of Columbus, or Robert Smith liable for any violation of constitutional rights under Section 1983. Defendants further argue that no Fourth Amendment violation occurred as Johnson did not shoot Justin Smith intentionally. Defendants argue that the doctrine of qualified immunity prevents the attachment of liability as none of the officers' actions could be considered "objectively unreasonable."

*Summary Judgment Standard*

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'… that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of

---

[2] As discussed further in this Opinion, Assistant Chief Johnson's recollection of the events has varied each time he has given a statement.

[3] Plaintiff conceded her claims against Robert Smith, Joe Johnson, and Rick Jones in their official capacities as duplicative of the claims brought against the City of Columbus. Moreover, Plaintiff waived her claims based on the Fourteenth Amendment. [209].

3

the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by… affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548. That burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

*Discussion and Analysis[4]*

A. Fourth Amendment Violation

Section 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law. Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998). The statute reads:

---

[4]Defendants' Motion to Strike [221] is granted in part and denied in part for the reasons set forth in the Court's discussion of the parties' pending motions. To the extent that motion is granted, the exhibits and arguments stricken were not relied on by the Court for the summary judgment analysis.

4

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to state a cause of action under Section 1983, a plaintiff must (1) allege a violation of rights secured by the constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law. Doe, 153 F.3d at 215. To prevail on a Fourth Amendment excessive-force claim, a plaintiff must establish: (1) an injury; (2) that the injury resulted directly from the use of excessive force; and (3) that the excessiveness of the force was unreasonable. Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007).

Apprehension by the use of deadly force is a seizure, see Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011) (citing Tennessee v. Garner, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)), and Justin Smith's death was an injury caused by the deadly force employed, so the only issue is whether the use of that deadly force was unreasonable. To gauge the objective reasonableness of the force, "we must balance the amount of force used against the need for force." Ramirez v. Knoulton, 542 F.3d 124, 129 (5th Cir. 2008) (internal quotation marks and citation omitted). The "[u]se of deadly force is not unreasonable when an officer would have reason to believe the suspect poses a threat of serious harm to the officer or others." Mace v. City of Palestine, 333 F.3d 621, 624 (5th Cir. 2003). Our inquiry into reasonableness is fact-specific and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

5

The courts considers "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." Guttirez v. City of San Antonio, 139 F.3d 441, 447 (5th Cir. 1998). Plaintiff's crime, trespassing, was not inherently violent. Jones testified that during the incident, Plaintiff did not pose a threat to the safety of the officers. There is a dispute as to how the events of January 31, 2008, transpired. The entire event, from breaking in the back door of 717 15th Street North until the gun was fired, lasted eleven seconds. Johnson testified to three different sequences of events on three separate occasions. On January 31, 2008, Johnson told the Mississippi Bureau of Investigation that he tripped and fell and the gun discharged. In February, Johnson informed Lieutenant Keith Worshaim that when he started to run after Smith, he fell and his right knee hit the floor and as he was falling the gun discharged. At his deposition taken for this case, Johnson stated that as he went to run after Justin Smith, he slipped and fell on his right knee, and as the rest of his body hit the floor, his gun hit the floor and discharged. Johnson has maintained that he was in the back part of the house and not in the living room as attested by Rick Jones.

According to both Plaintiff's and Defendants' experts, Johnson's recollection of the events conflicts with the physical evidence. First, testimony from Officer Karg noted that the trigger setting on the Sig Sauer forty caliber service weapon was such that the first trigger pull would be twice as hard as subsequent pulls and require up to ten pounds of pressure. Second, the shell casing from the bullet was found on the stairs leading from the hallway into the living room. Third, Jones contends he did not see any contact between Johnson and Smith, and Johnson contends there was no contact between himself and Smith. According to Dr. Steven Hayne and Dr. Frank Peretti, both of whom

6

conducted autopsies on Justin Smith, at the time of discharge, the gun was placed in tight contact with Justin Smith's clothes. Peretti actually reported gun powder evidence on Smith's body, meaning that the powder traveled through three layers of clothes. Hayne testified that Johnson's weapon was approximately an inch and a half from the body when fired. Peretti noted that the wound was "ovoid" or normal in all respects, leading Peretti to the conclusion that it would be physically impossible for Johnson to have accidentally shot Justin Smith. Moreover, the experts designated by both Plaintiff and Defendants noted that Justin Smith's right arm was raised when he was shot. George Schiro, a forensic scientist, noted that based on the physical and testimonial evidence in the case, it would be impossible to know whether the shooting of Justin Smith was intentional or accidental.

Based on Plaintiff's version of events, the Court cannot conclude, as a matter of law, that shooting Justin Smith was not unreasonable. See Schmidt v. Gray, 399 F. App'x 925, 929 (5th Cir. 2010) (affirming district court's finding that genuine issues of material fact as to whether the officer's conduct was intentional or accidental precluded summary judgment). Plaintiff has created a fact issue as to whether Johnson intentionally or accidentally shot Justin Smith.

Plaintiff has failed to sufficiently plead a Section 1983 claim against Rick Jones. In particular, Plaintiff cannot show that under the second prong of Doe that Jones *caused* any deprivation of Justin Smith's constitutional rights. It is undisputed that Johnson's firearm discharged the bullet that killed Justin Smith. Plaintiff has failed to allege that Jones did anything to cause or in furtherance of Smith's death. Therefore, Plaintiff's claims against Jones are dismissed for failure to raise a genuine issue of material fact as to his liability under Section 1983. Moreover, Plaintiff has failed to overcome Jones' defense of qualified immunity. No facts have been urged by

the Plaintiff that actions taken by Jones were objectively unreasonable. Thus, all claims against Rick Jones are dismissed.

### B. Failure to Train and/or Supervise

Plaintiff seeks to hold Robert Smith liable due to his questionable conduct with regards to Plaintiff's son. Prior to being elected mayor of Columbus, Robert Smith owned a bail bonding company. Robert Smith's long-time girlfriend, Susie Somerville, was a personal surety. Somerville wrote a $10,000 bond on Justin Smith for a 2005 burglary arrest. The bond was still outstanding when these events transpired. In fact, Somerville had until February 27, 2008, to produce Justin Smith to the court or be personally liable for the $10,000 bond.

One week prior to his death, the Columbus Police Department issued a "Be on the Lookout" for Justin Smith and created "Wanted" posters with his name and photograph. On January 28, 2008, officers arrived at Deborah Ray's home looking for her son, Justin Smith. She refused to let the officers search her home without a search warrant. Officer Carl Kemp called the mayor to see if he could come to Ray's house and help diffuse the situation. According to Plaintiff and her son, Nigel Smith, Mayor Smith told them that if they did not allow the officers to come in and search for Justin Smith, he would not be responsible for what might happen to them. Nigel Smith recalls the mayor stating that he would not be responsible for what might happen "if officers ran across Justin [Smith] on the streets." After the mayor left, Plaintiff allowed two officers to search her home. They did not find Justin Smith at the residence.

Under Section 1983, a government official can be held liable only for his own misconduct. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Beyond his own conduct,

8

the extent of his liability as a supervisor is similar to that of a municipality that implements an unconstitutional policy. Statements made to Deborah Ray and the Mayor's position as the boyfriend of the personal surety of Justin Smith's bond do not establish a policy or custom of excessive force in the Columbus Police Department. Moreover, the mayor has no control over the supervision of the police department on a day to day basis. Thus, there is no evidence that Mayor Robert Smith established any sort of policy during this one incident, so summary judgment on this claim is proper. Carnaby v. City of Houston, 636 F.3d 183, 189 (5th Cir. 2011).

Because city policymakers know that their officers will be required to arrest fleeing suspects, the need to train officers on the constitutional limitations of deadly force is "so obvious" that the failure to do so adequately constitutes deliberate indifference and can give rise to Section 1983 liability. See City of Canton v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Furthermore, if officers regularly exercise their discretion in a manner that often violates constitutional rights, need for further training is also obvious. See id.

To succeed on her failure-to-train claim, Plaintiff must show that (1) the training procedures were inadequate; (2) the city's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused Justin Smith's injury. See Conner v. Travis Co., 209 F.3d 794, 796 (5th Cir. 2000).

Johnson and Jones were trained at a law enforcement academy and certified by the State of Mississippi. The Columbus Police Department submitted evidence that Johnson was trained in 1995 in the "Prevention of Accidental Discharge of a Firearm." Johnson testified that he has carried the same service weapon since 2004 and has completed training with that weapon consistently since that

9

time. The Columbus Police Department has in place a "Use of Deadly Force Procedure" outlining when the use of deadly force is appropriate.

There is no evidence that either officer evidenced a pattern of conduct to indicate the need for additional training. Nor is there any proof that the City was on notice that either Johnson or Jones needed additional training or supervision. Prior to this suit there were no complaints that would reasonably put the City on notice that Johnson would injure Smith or any other person under the same circumstances. Moreover, there is no evidence of constitutionally inadequate supervision of City police officers. Accordingly, Plaintiff has not shown that the City of Columbus was deliberately indifferent in their training or supervision of its police officers nor that those inadequate policies caused Justin Smith's injury. Conner, 209 F.3d at 796. The failure to train and failure to supervise claims are dismissed.

### C. Other Pending Motions

Plaintiff seeks to exclude from trial expert testimony offered by Michael Knox and Mark Dunston that the shooting of Justin Smith was accidental [217]. Pursuant to Federal Rule of Evidence 704, testimony is not "objectionable because it embraces an ultimate issue to be decided by the trier of fact." Thus, any expert qualified in this case may testify that the shooting was accidental or intentional as long as those opinions satisfy Federal Rule of Evidence 702. Plaintiff's motion [217] is DENIED.

Defendants seek to exclude portions of Plaintiff's experts' testimonies [219]. In particular, Defendants assert that the following portions of Plaintiff's experts opinions should be stricken:

(1) Forensic scientist George Schiro, Jr.'s improper rebuttal testimony;

(2) Schiro's opinion that if Johnson shot Smith as he was running past him, the shooting was unreasonable;

(3) Schiro's testimony that the forty caliber Sig Sauer had a "deliberate" trigger pull;

(4) Steven Hayne, M.D.'s conclusions based on facts not in evidence, particularly that Smith was "residing" at the address and did not pose any threat to the officers;

(5) Steven Hayne's use of Johnson's recollection of events and discounting of Jones' recollection, and his opinion that the shooting was unreasonable;

(6) All of Frank Peretti, M.D.'s opinion because he did not review Hayne's completed autopsy report or Hayne's complete deposition before issuing his report;

(7) Peretti's conclusions about the reasonableness of the shooting.

*(i) Rebuttal Expert Witness*

Plaintiff designated an additional "rebuttal" expert witness after Defendants designated their expert witnesses. The Magistrate Judge allowed the designation of a forensic consultant re-constructionist. Plaintiff then designated George Schiro, Jr. Defendants seek to exclude Schiro's testimony as beyond the scope of proper rebuttal witness testimony.

Defendants have failed to cite any authority as to the proper role of a rebuttal expert witness. Federal Rule of Civil Procedure 26(a)(2)(D)(ii) does not define a "rebuttal expert witness" but does

set a time limit for disclosure of expert witness evidence "intended solely to contradict or rebut evidence on the same subject matter" identified by another expert witness.

Schiro's first opinion challenges Johnson's recollection of the events of January 31, 2008. In his deposition, he admitted that this opinion did not rebut any particular opinion of any of Defendants' experts.

Defendants designated Michael Knox and Mark Dunston as experts in this case. In his report, Knox relied on the fact that Johnson could not pinpoint where he was in the house when the weapon discharged. He then recounted Jones' statement of the events as a basis for his opinion. Dunston noted that Smith and Johnson collided. Neither of Defendants' experts took issue with Johnson's recollection of events, and in fact, neither relied on Johnson's recount of the events.

The Court finds that Schiro's first opinion regarding Joe Johnson's account being unsupported by the physical evidence invades the province of the jury in determining the credibility of witnesses and is improper expert testimony.

*(ii) Reasonableness of the Shooting*

The "reasonableness" of the shooting in this instance does not require "scientific, technical, or other specialized knowledge" to determine. Thus, testimony as to the reasonableness of the shooting will not assist the trier of fact and shall be excluded. See Fed. R. Evid. 702.

*(iii) Deliberate Pull Trigger*

Schiro is preliminarily designated as an expert in Forensic Science and Criminalistics. He has not established at this point that he has the knowledge, skill, experience, training or education

to testify as to the trigger pull of the forty caliber Sig Sauer. According to Plaintiff, Schiro read the instruction manual of the weapon to gain his knowledge about the trigger pull. At the trial phase, Plaintiff may attempt to evidence Schiro's expert qualifications as to the forty caliber Sig Sauer. However, for purposes of this motion and the Motion to Strike, the Court will not consider this opinion testimony pursuant to Federal Rule of Evidence 702.

*(iv) Steven Hayne, M.D., and Frank Peretti, M.D.*

Dr. Hayne's statements that Justin Smith "resided" at 717 15th Street North and did not pose a threat to officers will be subject to cross-examination at trial. Likewise, Dr. Peretti will be subject to cross-examination about his failure to review Dr. Hayne's completed autopsy. As noted above, neither may testify as to the reasonableness of the shooting.

Defendants' motion [219] is thus granted in part and denied in part.

*Conclusion*

Rick Jones' Motion for Summary Judgment [191] is GRANTED as Plaintiff has failed to create a genuine issue of material fact that Jones caused a constitutional violation or that his conduct was unreasonable.

Likewise, Robert Smith's Motion for Summary Judgment [188] is GRANTED. Plaintiff has failed to show that his conduct caused Justin Smith's death, or that he established any unconstitutional policy regarding Columbus Police Department's training or supervision that caused Smith's death.

The City of Columbus' Motion for Summary Judgment [190] is also GRANTED. Plaintiff has not created a genuine issue of material fact as to whether the City may be held liable for failure to train or supervise the Columbus Police Department.

Joe Johnson's Motion for Summary Judgment [192] is DENIED. The Court finds there exists a genuine issue of material fact as to whether the shooting was intentional or accidental.

Defendants' Motion to Strike [221] is GRANTED IN PART and DENIED IN PART.

Plaintiff's Motion to Exclude Expert Testimony [217] is DENIED.

Defendants' Motion to Exclude Expert Testimony [219] is GRANTED IN PART and DENIED IN PART.

SO ORDERED, this the 17th day of August, 2011.

 /s/ Sharion Aycock
 **U.S. DISTRICT JUDGE**